### LACKEY v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. February 12, 1901.)

No. 840.

ELECTIONS—OFFENSES AGAINST RIGHT OF SUFFRAGE—CONSTITUTIONALITY OF FEDERAL LEGISLATION.

Rev. St. § 5507, providing that "every person who prevents, hinders, controls, or intimidates another from exercising or in exercising the right of suffrage, to whom that right is guarantied by the fifteenth amendment to the constitution of the United States, by means of bribery or threats," etc., shall be punished, is void, as beyond the constitutional power of congress. The only power possessed by congress to legislate with reference

to elections held solely for state or municipal purposes is derived from the fifteenth constitutional amendment, providing that "the right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude," and that "the congress shall have power to enforce this article by appropriate legislation"; but the right conferred by such article, and which congress may enforce by legislation, is not the right of suffrage, but the right of the citizen to exemption from being discriminated against in the exercise of the elective franchise by the United States or a state on account of race, color, or previous condition of servitude, while the statute is not limited to the enforcement of such right, and in fact has no relation to it, but is so broad in its terms as to make punishable as a criminal offense an act of a private person committed at a state election, if committed against a voter of African descent, although it has no relation to the race, color, or previous condition of such voter.

In Error to the District Court of the United States for the District of Kentucky.

The plaintiff in error has been convicted under an indictment based upon section 5507 of the Revised Statutes of the United States. The indictment contained two counts, the first of which charged, in substance, that certain "negroes, colored men, men of African descent, and not white men," being citizens of Kentucky and of the United States, and qualified voters under the laws of Kentucky and of the United States, were unlawfully and feloniously "and on account of their race, color, and previous condition of servitude," intimidated and prevented from exercising their lawful right of suffrage at a certain state election held in the state of Kentucky on November 7, 1899, for the election of state, county, and municipal officers, "by means of bribery, and by bribing them," the said citizens and voters of African descent. The second count is identical with the first, save that it omits the averments that the intimidation and bribery were "on account of race, color, or previous condition of servitude." The district attorney dismissed the first count, and went to trial upon the second count, and secured a conviction thereunder.

See 99 Fed. 952.

Isaac T. Woodson, for plaintiff in error.

R. D. Hill and W. C. P. Breckenridge, for the United States.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, having made the foregoing statement of the case, delivered the opinion of the court.

There was evidence tending to show that the plaintiff in error "prevented" a number of voters "of African descent" from voting at a purely state election, at which they were qualified to vote under the law of Kentucky, by promising them that if they would go away from the polls without voting, and stay away until after the polls had been closed, he would pay each of them the sum of five dollars. The only count upon which the plaintiff in error was tried contained no averment that these colored voters were "prevented" from exercising the right of suffrage "on account of race, color, or previous condition of servitude," nor was any such discrimination made an element of the offense by any ruling or charge of the court below. Neither was it averred in the indictment, nor shown in the proof, that these colored citizens and voters were prevented, hindered, or controlled in the exercise of their right of suffrage at any election at which either presidential electors or congressmen were to be voted for. Nor was it averred or pretended that there was any

law of the state of Kentucky which either denied or abridged the right of suffrage on "account of race, color, or previous condition of servitude," or that the plaintiff in error, in preventing these colored voters from exercising the right of suffrage, was acting in any official character whatever. Is it, then, an offense against the United States, if a private citizen prevents a colored citizen and qualified voter from voting at a purely state election, where his conduct is not grounded upon "race, color, or previous condition of servitude"? The indictment is based upon section 5507 of the Revised Statutes of the United States, which reads as follows:

"Every person who prevents, hinders, controls, or intimidates another from exercising, or in exercising, the right of suffrage, to whom that right is guaranteed by the fifteenth amendment to the constitution of the United States, by means of bribery or threats of depriving such person of employment or occupation, or of ejecting such person from a rented house, lands, or other property, by threats of refusing to renew leases or contracts for labor, or by threats of violence to himself or family, shall be punished as provided in the preceding section."

This section comes from the enforcement act of May 31, 1870 (16 Stat. 141), and is the fifth section of that act, carried into the revision without alteration. This section provides for the punishment of those who obstruct the free exercise of the elective franchise, without distinction between elections where presidential electors or members of congress are to be chosen and those which are only for the election of state or municipal officers. It is also very clear that it is not limited to offenses grounded upon race, color, or previous condition of servitude. The only limitation of the provision is that the offenses shall be in respect of the exercise of the right of suffrage by a class of voters described as those "to whom that right is guaranteed by the fifteenth amendment to the constitution of the United States." It is a well-settled rule of constitutional construction that the congress has power to protect the exercise of every right created by, arising under, or dependent upon the constitution of the United States, and may provide for the enforcement of every such right, privilege, or immunity by such legislation as may be reasonably adapted to that end. Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. 152, 28 L. Ed. 274; In re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55; Logan v. U. S., 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429; In re Quarles, 158 U. S. 532, 15 Sup. Ct. 959, 39 L. Ed. 1080. Examples of rights arising under or dependent upon the constitution and laws of the United States are found in the cases cited above. Thus, the right to vote for a member of congress was, in Ex parte Yarbrough, held to be a right arising under the constitution of the United States. In U. S. v. Cruikshank, 92 U. S. 542, 553, 23 L. Ed. 588, it was said that the right to petition congress for a redress of grievances is a right secured to citizens of the United States by the constitution. In Logan v. U. S., cited above, it was held that the right of a prisoner in the lawful custody of an officer of the United States to be protected against assault and murder is a right arising under and dependent upon the constitution. In Re Quarles, cited above, it was held that it is the right of every private citizen to inform a mar-

shal of the United States of a violation of the revenue laws of the United States, and a right secured by the constitution, and that a conspiracy to injure, oppress, threaten, or intimidate in the free exercise of this right, or because of having exercised it, is punishable under section 5508 of the Revised Statutes. So, in the Case of Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55, it was held that the right of every judicial or executive officer of the United States to be protected from lawless violence while in the exercise of the duties and functions of his office is a right arising under the constitution, and that it is the duty of the United States to afford such protection. In Ex parte Yarbrough the conviction was upon an indictment based upon section 5508, Rev. St., which provides for the punishment of those who conspire "to injure, oppress, threaten or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the constitution or laws of the United States." The conspiracy charged was that the defendants conspired to intimidate a citizen of African descent in the exercise of his right to vote for a member of congress, and that they did this on account of his race, color, or previous condition of servitude. The conviction was sustained upon the ground that the right to vote for a member of congress depended upon the constitution of the United States, and was, therefore, a right secured thereby, which it was the duty of congress to protect. Upon this subject, the court, speaking by Justice Miller, said:

"But it is not correct to say that the right to vote for a member of congress does not depend on the constitution of the United States. The office, if it be properly called an office, is created by that constitution, and by that alone. It also declares how it shall be filled by election. Its language is: "The house of representatives shall be composed of members chosen every second year by the people of the several states, and the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislature.' Article 1, § 2. The states, in prescribing the qualifications of voters for the most numerous branch of their own legislatures, do not do this with reference to the election for members of congress. Nor can they prescribe the qualification for voters for those eo nomine. They define who are to vote for the popular branch of their own legislature, and the constitution of the United States says the same persons shall vote for members of congress in that state. It adopts the qualification thus furnished as the qualification of its own electors for members of congress. It is not true, therefore, that electors for members of congress owe their right to vote to the state law in any sense which makes the exercise of the right to depend exclusively on the law of the state."

The judgment of the court was also rested, in part, upon the broader ground that the congress had the general implied "power to protect the elections on which its existence depends from violence and corruption." But all that is said in that case upon this aspect of the question was said of elections at which electors or congressmen are to be chosen, and of the direct interest of the United States in securing such elections from violence, corruption, and fraud. But whether the power of congress to legislate in respect to congressional elections depends upon the effect of the second and fourth sections of article 1 of the constitution, or arises out of the implied power to protect such elections against violence and fraud be-

cause they are federal elections so far as federal officials are thereby directly chosen, it is very obvious that, whether such power be attributed to either the one or the other source, it furnishes no reason for any interference at a purely state election. This we do not understand to be controverted by the able counsel who have argued this case. But, whether conceded or not, it remains as true now as it was when the supreme court, in U. S. v. Reese, 92 U. S. 214, 218, 23 L. Ed. 563, said that the power of congress to legislate at all upon the subject of state elections depends upon the fifteenth amendment to the constitution. If, therefore, section 5507 of the Revised Statutes is not legislation authorized by that amendment, it must fall. That amendment is in these words:

"Section 1. The right of citizens of the United States to vote shall not be denied or abridged by the United States, or by any state, on account of race, color or previous condition of servitude.

"Sec. 2. The congress shall have power to enforce this article by appropriate legislation."

That amendment does not confer a right of suffrage upon any one, nor does it secure or guaranty any right of suffrage to any class of citizens. It has no other force or effect than to forbid discrimination by the United States and by the states "on account of race, color, or previous condition of servitude." This precise question arose in U. S. v. Reese, 92 U. S. 215, 23 L. Ed. 563, where the constitutionality of the third and fourth sections of the act of May 31, 1870, was involved. Those sections were parts of the original enforcement act, from which section 5507 of the Revised Statutes comes; it having been the fifth section of that act. Those sections, like the fifth section, were broad enough to cover unlawful obstructions to the exercise of the elective franchise, whether committed at state elections or elections where electors or members of congress were to be chosen; and, like the fifth section, were not limited to discriminations "on account of race, color, or previous condition of servitude." The third section of the act there involved provided that an offer to perform any act made by law a prerequisite to voting was equivalent to performance, where performance was wrongfully denied by the officer executing the law; and the fourth section prescribed penalties for unlawfully hindering, obstructing, or preventing any citizen from doing any act required to be done to qualify him to vote. The fifth section continues the protection extended to voters by providing for the punishment of those who should by intimidation or bribery prevent any person from exercising the elective franchise "to whom the right of suffrage is secured or guaranteed by the fifteenth amendment of the constitution of the United States." Certain inspectors of a municipal election in the state of Kentucky were indicted for refusing to receive and count at said election the vote of one Garner, a citizen of the United States of African descent. The indictment was based upon the third and fourth sections. The contention there, as here, was that the fifteenth amendment had created a class of voters which it was the duty of congress to protect in the exercise of the elective franchise, and that it was competent for congress to provide for the punishment

of every obstruction to the exercise of that right as a right arising under or dependent upon the constitution of the United States. To this contention the court said:

"Rights and immunities created by or dependent upon the constitution of the United States can be protected by congress. The form and the manner of the protection may be such as congress, in the legitimate exercise of its legislative discretion, shall provide. These may be varied to meet the necessities of the particular right to be protected. The fifteenth amendment does not confer the right of suffrage upon any one. It prevents the states, or the United States, however, from giving preference, in this particular, to one citizen of the United States over another on account of race, color, or previous condition of servitude. Before its adoption, this could be done. It was as much within the power of a state to exclude citizens of the United States from voting on account of race, etc., as it was on account of age, property, or education. Now it is not. If citizens of one race, having certain qualifications, are permitted by law to vote, those of another having the same qualifications must be. Previous to this amendment, there was no constitutional guaranty against this discrimination; now there is. It follows that the amendment has invested the citizens of the United States with a new constitutional right, which is within the protecting power of congress. That right is exemption from discrimination in the exercise of the elective franchise on account of race, color, or previous condition of servitude. This, under the express provisions of the second section of the amendment, congress may enforce by 'appropriate legislation.' This leads us to inquire whether the act now under consideration is 'appropriate legislation' for that purpose. The power of congress to legislate at all upon the subject of voting at state elections rests upon this amendment. The effect of article 1, § 4, of the constitution, in respect to elections for senators and representatives, is not now under consideration. It has not been contended, nor can it be, that the amendment confers authority to impose penalties for every wrongful refusal to receive the vote of a qualified elector at state elections. It is only when the wrongful refusal at such an election is because of race, color, or previous condition of servitude that congress can interfere, and provide for its punishment. If, therefore, the third and fourth sections of the act are beyond that limit, they are unauthorized."

Examining the sections there involved, the court held that neither section was confined in its operation to unlawful discriminations on account of race, color, or previous condition of servitude. "If congress had the power," said the court, "to provide generally for the punishment of those who unlawfully interfere to prevent the exercise of the elective franchise without regard to such discrimination, the language of these sections would be broad enough for that purpose." Having held that congress was only authorized to interfere with the voting at a state election when the wrongful refusal to receive and count a vote is because of race, color, or previous condition of servitude, the court held that the two sections there involved were beyond the limit authorized by the fifteenth amendment.

In U. S. v. Cruikshank, 92 U. S. 542, 555, 556, 23 L. Ed. 588, two of the counts of the indictment were for hindering and preventing the citizens named, who were described as being of African descent, "in the free exercise and enjoyment of their several and respective right and privilege to vote at any election to be thereafter by law had and held by the people in and of the state of Louisiana, or by the people of and in the parish of Grant aforesaid." These counts, as well as all the other counts of the indictment, were based upon the sixth section of the act of May 31, 1870, now section 5508 of the

Revised Statutes. Concerning these particular counts, the court said:

"In Minor v. Happersett, 21 Wall. 178, 22 L. Ed. 627, we decided that the constitution of the United States has not conferred the right of suffrage upon any one, and that the United States have no voters of their own creation in the states. In U. S. v. Reese, 92 U. S. 214, 23 L. Ed. 563, we hold that the fifteenth amendment has invested the citizens of the United States with a new constitutional right, which is exemption from discrimination in the exercise of the elective franchise on account of race, color, or previous condition of servitude. From this it appears that the right of suffrage is not a necessary attribute of national citizenship, but that exemption from discrimination in the exercise of that right on account of race, etc., is. The right to vote in the states comes from the states, but the right of exemption from the prohibited discrimination comes from the United States. The first has not been granted or secured by the constitution of the United States, but the last has been. Inasmuch, therefore, as it does not appear in these counts that the intent of the defendants was to prevent these parties from exercising their right to vote on account of their race, etc., it does not appear that it was their intent to interfere with any right granted or secured by the constitution or laws of the United States. We may suspect that race was the cause of the hostility, but it was not so averred. This is material to a description of the substance of the offense, and cannot be supplied by implication. Everything essential must be charged positively, and not inferentially. The defect here is not in form, but in substance."

Similar views as to the limitation upon the powers of congress in respect of the legislation authorized by the fifteenth amendment are expressed in U. S. v. Harris, 106 U. S. 629, 637, 1 Sup. Ct. 601, 27 L. Ed. 290.

But it is said that the law upon which the indictment at bar is based escapes the vice of the law condemned in U. S. v. Reese, supra, by the fact that its operation is confined to offenses obstructive to the exercise of the elective franchise by a class of voters described in the law as "those to whom the right of suffrage is secured and guarantied by the fifteenth amendment." "This class," counsel say, "is constituted solely of citizens of African descent, and the operation of the law limited to offenses denying or abridging this right of suffrage." But this argument is based upon a misapprehension of the vice in those portions of the enforcement act commented upon in U. S. v. Reese. If the right conferred, secured, or guarantied by the fifteenth amendment is not the right of suffrage, but the right of exemption from discrimination in the exercise of the elective franchise on account of race, color, etc., then the legislation which congress is authorized to enact in respect of voting at state elections by that amendment must be limited to acts which prevent or punish the discrimination therein forbidden. Every wrongful obstruction of the suffrage of the black man at a state election is not on account of race, color, etc. Unless he is hindered or prevented from the free exercise of the elective franchise on account of his race, color, etc., there has not been a denial or abridgment of the right of suffrage within the prohibitions of the amendment. Both U. S. v. Reese and U. S. v. Cruikshank were decided upon the ground that discrimination on account of color, race, etc., is essential to the commission of any offense against the United States at a state election. In Ex parte Yarbrough, cited

above, this limitation was held not to apply at elections where congressmen were to be chosen, because the right to vote for congressmen is a right secured by and dependent upon the constitution of the United States, the office being created and the qualification of voters being determined by that instrument.

The vice of the fifth section, now section 5507 of the Revised Statutes, is precisely the vice of the third and fourth sections of the same act. It is not limited in its operation to congressional or presidential elections, nor to offenses grounded upon race, color, or previous condition of servitude. Reading the section in connection with the other parts of the act from which it was taken, it is too obvious for discussion that congress intended that it should have operation in all elections, and should not be limited to obstructions to the free exercise of the elective franchise based upon race, etc. Indeed, this is the very meaning attached to the act by the court below. The indictment in the case at bar did not aver the bribery to have been because of color, etc., and, if it had, it would have added an element not named in the statute. The same conclusion, in respect to the invalidity of this section, was reached by Judge Gresham, in U. S. v. Amsden (D. C.) 6 Fed. 319. Without considering the further question as to whether the power of congress to legislate in respect to purely state elections is not also limited to prohibitions of discrimination by the United States, and by the states and their officers or others, claiming to act under color of laws within the prohibition of the amendment, we are content to hold that section 5507 is void, as including within its operation offenses not grounded upon race, color, or previous condition of servitude, and therefore in excess of the power of congress in respect of state elections; its powers in respect to such elections being dependent upon the fifteenth amendment alone.

A number of errors in respect to the charge delivered and to charges refused have been assigned. Inasmuch as we have unanimously reached the conclusion that the law under which the indictment was found is repugnant to the constitution, it becomes unnecessary to consider the mere details of the trial. Judgment reversed, with directions to sustain the demurrer to the indictment, and discharge the plaintiff in error without day.