### KAREM v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. February 24, 1903.)

#### No. 1,068.

1. ELECTION—FEDERAL LEGISLATION AFFECTING STATE ELECTIONS—LIMITATION OF POWER.

The power of Congress to legislate on the subject of voting at purely state elections is entirely dependent upon the fifteenth constitutional amendment, and is limited by such amendment to the enactment of appropriate legislation to prevent the right of a citizen of the United States

to vote from being denied or abridged by a state on account of race, color, or condition; and since the amendment is, in terms, addressed to action by the United States or a state, appropriate legislation for its enforcement must also be addressed to state action, and not to the action of individuals.

**2.** PENAL STATUTE—CONSTRUCTION—CONSTITUTIONAL POWER TO ENACT.

A penal act of Congress cannot be sustained, as an exercise of the power given by a constitutional provision to enact appropriate legislation for its enforcement, where the act is broader in its terms than the constitutional provision, and the language used covers wrongful acts without as well as within the same. In such case the courts cannot limit the act by construction, and bring it within the constitutional grant of power.

**8.** ELECTIONS—PREVENTING CITIZEN FROM VOTING AT STATE ELECTION—FEDERAL STATUTE.

Rev. St. § 5508 [U. S. Comp. St. 1901, p. 3712], which makes it a criminal offense "if two or more persons conspire to injure, oppress, threaten or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States," is not appropriate legislation for the enforcement of the fifteenth constitutional amendment, both because it relates to the acts of individuals, and not of a state, and because it is broader in its terms than the legislation authorized by the amendment; and it will not sustain an indictment for conspiring to prevent a citizen from voting at a purely state or municipal election on account of his race or color, whether the defendants are charged as individuals, or as officers of the state.

In Error to the District Court of the United States for the Western District of Kentucky.

The plaintiff in error has been convicted under an indictment framed under section 5508 of the Revised Statutes [U. S. Comp. St. 1901, p. 3712]. The indictment, in substance, charges that the plaintiff in error and C. H. Watson and G. P. Bohn and others, to the grand jury unknown, combined and conspired together to injure, oppress, threaten, and intimidate certain named persons of color, citizens of the United States and of the state of Kentucky, and lawfully qualified voters under the law of Kentucky, from exercising and enjoying "a right and privilege secured to them * * * by the Constitution and laws of the United States, to wit, the right and privilege to vote at the election hereafter named, without distinction of race, color, or previous condition of servitude." It is then averred that there was held within the state of Kentucky on November 7, 1899, an election for state and municipal offices only, and that at a certain named precinct the defendant Karem was a judge of election, C. H. Watson a clerk, and G. P. Bohn the sheriff holding the election, and that the said persons of color were lawful voters in said precinct, and legally entitled to vote at said election, and that they each appeared at the polls within the time fixed by law and offered to vote in and at said election, but that, in pursuance of the conspiracy aforesaid, the said defendants did prevent them from voting on account of their race, color, and previous condition of servitude. To this indictment the defendant Karem demurred upon the ground that the facts stated did not constitute an offense against the laws of the United States. The demurrer was overruled. The indictment was dismissed as to the alleged conspirator Bohn. The remaining defendants, Karem and Watson, entered pleas of not guilty. At the conclusion of all the evidence each of the defendants moved the court to instruct the jury to find against the government. This motion was allowed as to Watson and disallowed as to Karem, who has sued out this writ to reverse a judgment based upon a verdict of guilty.

W. M. Smith and Swager Shirley, for plaintiff in error.

R. D. Hill, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

Many errors have been assigned and argued, but, inasmuch as we are of opinion that no offense was charged against the United States in the indictment, it is wholly unnecessary to pass upon any of the other questions of either fact or law.

If congress has not declared the acts charged to have been done by Karem to be an offense against the United States, the courts have no power to treat them as such, even though the congress may have the constitutional power to make such acts a crime against the United States. United States v. Reese, 92 U. S. 214, 23 L. Ed. 563.

The contention of the government is that the acts charged constitute an offense indictable and punishable under sections 2004 and 5508 [U. S. Comp. St. 1901, pp. 1272, 3712]. Those sections are in these words:

"Sec. 2004. All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any state, territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any state or territory, or by or under its authority, to the contrary notwithstanding."

"Sec. 5508. If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or if two or more persons go in disguise on the highway, or on the premises of another with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured, they shall be fined not more than $5,000 and imprisoned not more than ten years; and shall, moreover, be thereafter ineligible to any office, or place of honor, profit, or trust created by the Constitution or laws of the United States."

Neither the act from which section 2004 is taken, nor any section of the Revised Statutes, undertakes, in terms, to make its violation an offense against the United States, or provide for any punishment. It does nothing more than the amendment does proprio vigore. As said in Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. 152, 28 L. Ed. 274, the amendment "annulled the discriminating word 'white,'" wherever it was found in a state constitution or election law, "and thus placed the colored person in the enjoyment of the same right as white persons." "And," said Justice Miller, in the same case, "such would be the effect of any future constitutional provision of a state which should give the right of voting exclusively to white people, whether they be men or women."

But if section 2004 be regarded as anything more than a declaration of the effect of the fifteenth amendment, no penalty is provided for its violation. In United States v. Reese, 92 U. S. 214, 216, 23 L. Ed. 563, the court said:

"If Congress has not declared an act done within a state to be a crime against the United States, the courts have no power to treat it as such."

Referring to this section 2004, then the first section of the act of 1870 (Act May 31, 1870, c. 114; 16 Stat. 140), the court said:

"It is not claimed that there is any statute which can reach this case, unless it be the one in question. Looking, then, to this statute, we find that its first section provides that all citizens of the United States, who are or shall be otherwise qualified by law to vote at any election, * * * shall be entitled and allowed to vote thereat, without distinction of race, color, or previous condition of servitude, any constitution * * * of the state to the contrary notwithstanding. This simply declares a right, without providing a punishment for its violation."

The indictment in this case must therefore be predicated wholly upon section 5508, or the acts charged have not constituted an offense punishable by the United States. But the constitutional authority for the legislation embodied in this section is very much broader than the fifteenth amendment. It was the sixth section of the enforcement act of 1870 (Act May 31, 1870, c. 116; 16 Stat. 141). The character of the "rights and privileges" protected is best illustrated by some of the cases in which it has been construed and enforced. The right of a qualified voter to vote for a member of Congress is a right "secured by the Constitution or laws of the United States," within the meaning of section 5508 of the Revised Statutes. Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. 152, 28 L. Ed. 274. In the case cited the indictment was brought under sections 5508 and 5520 of the Revised Statutes. The indictment in that case charged that the conspiracy was to deprive certain qualified colored voters, on account of their color, race, or previous condition of servitude, "of the enjoyment of the right and privileges of suffrage in the election of a lawfully qualified person as a member of the Congress of the United States, * * * which said right and privilege of suffrage was secured to the said Berry Saunders by the Constitution and laws of the United States." The Supreme Court held that the right to vote in a congressional election was a right secured by, and dependent upon, the Constitution and laws of the United States. In Lackey v. United States, 46 C. C. A. 189, 107 Fed. 114, 53 L. R. A. 660, after quoting from the opinion the argument for that conclusion, we said:

"The judgment of the court was also rested, in part, upon the broader ground that the Congress had the general implied power to protect the elections on which its existence depends fom violence and corruption. But all that is said in that case upon this aspect of the question was said of elections at which electors or Congressmen are to be chosen, and of the direct interest of the United States in securing such elections from violence, corruption, and fraud. But whether the power of Congress to legislate in respect to congressional elections depends upon the effect of the second and fourth sections of article 1 of the Constitution, or arises out of the implied power to protect such elections against violence and fraud because they are federal elections so far as federal officials are thereby directly chosen, it is very obvious that, whether such power be attributed to either the one or the other source, it furnishes no reason for any interference at a purely state election."

In United States v. Waddell, 112 U. S. 76, 5 Sup. Ct. 35, 28 L. Ed. 673, an indictment under this section was also sustained. "The particular right held in that case to be dependent on and secured by the laws of the United States, and to be protected by section 5508 of the Revised Statutes, against interference by individuals, was the right of a citizen, having made a homestead entry on public land, within the limits of the state, to continue to reside on the land for five years, for the purpose of protecting his title."

In Logan v. United States, 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429, it was held that a citizen of the United States, in the custody of a marshal of the United States under a lawful commitment to answer an offense against the United States, has the right to be protected by the United States against lawless violence, and that this right is a right secured to him by the Constitution and laws of the United States and that a conspiracy to prevent his enjoyment of this right of protection is indictable under section 5508.

None of the cases in which an indictment under this section has been sustained involved a discrimination against voters in a purely state election on account of race, color, or previous condition of servitude. It is plain that resort can be had to this section only upon the theory that the right to vote at a purely state election is a right or privilege secured by the Constitution or laws of the United States. But the power of Congress to legislate at all upon the subject of voting at purely state elections is entirely dependent upon the fifteenth amendment. United States v. Reese, 92 U. S. 214, 23 L. Ed. 563; United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588. The plain purpose of that amendment was to prevent all discrimination by the United States and by the states in the exercise of the suffrage on account of "race, color, or previous condition of servitude." The amendment reads thus:

"Section 1. The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude.

"Sec. 2. The Congress shall have the power to enforce this article by appropriate legislation."

The well-settled construction of the article is that it does not confer the right of suffrage upon any one. United States v. Reeves, 92 U. S. 214, 23 L. Ed. 563; United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588.

In the case last cited the opinion in the Circuit Court was by Justice Bradley, and is reported as U. S. v. Cruikshank, 1 Woods, 308, and Fed. Cas. No. 14,897. In the opinion referred to, the learned justice, referring to the amendment, said:

"It does not confer the right to vote. That is the prerogative of the state laws. It only confers a right not to be excluded from voting by reason of race, color, or previous condition of servitude, and this is all the right that Congress can enforce."

Referring to the power of Congress to enforce this amendment by appropriate legislation, he said:

"It is not the right to vote which is guaranteed to all citizens. Congress cannot interfere with the regulation of that right by the states, except to prevent, by appropriate legislation, any distinction as to race, color, or previous condition of servitude. The state may establish any other conditions and discriminations it pleases, whether as to age, sex, property, education, or anything else."

In United States v. Reese, cited above, the court said:

"The fifteenth amendment does not confer the right of suffrage upon any one. It prevents the states, or the United States, however, from giving preference in this particular to one citizen of the United States over another on account of race, color, or previous condition of servitude. Before its

adoption, this could be done. It was as much within the power of a state to exclude citizens of the United States from voting on account of race, etc., as it was on account of age, property, or education. Now it is not. If citizens of one race, having certain qualifications, are permitted by law to vote, those of another having the same qualifications must be. Previous to this amendment there was no constitutional guaranty against this discrimination. Now there is. It follows that the amendment has invested the citizens of the United States with a new constitutional right, which is within the protecting power of Congress. That right is exemption from discrimination in the exercise of the elective franchise on account of race, color, or previous condition of servitude. This, under the express provisions of the second section of the amendment, Congress may enforce by 'appropriate legislation.' "

In United States v. Cruikshank, cited above, the court said:

"In Minor v. Happersett, 21 Wall. 178, 22 L. Ed. 627, we decided that the Constitution of the United States has not conferred the right of suffrage upon any one, and that the United States have no voters of their own creation in the states. In United States v. Reese et al., supra, we hold that the fifteenth amendment has invested the citizens of the United States with a new constitutional right, which is exemption from discrimination in the exercise of the elective franchise on account of race, color, or previous condition of servitude. From this it appears that the right of suffrage is not a necessary attribute of national citizenship, but that exemption from discrimination in the exercise of that right on account of race, etc., is. The right to vote in the states comes from the states, but the right of exemption from the prohibited discrimination comes from the United States. The first has not been granted or secured by the Constitution of the United States, but the last has been."

The Fifteenth amendment is therefore a limitation upon the powers of the states in the execution of their otherwise unlimited right to prescribe the qualification of voters in their own elections, and the power of Congress to enforce this limitation is necessarily limited to legislation appropriate to the correction of any discrimination on account of race, color, or condition. The affirmative right to vote in such elections is still dependent upon and secured by the Constitution and laws of the state, the power of the state to prescribe qualification being limited in only one particular. The right of the voter not to be discriminated against at such elections on account of race or color is the only right protected by this amendment, and that right is a very different right from the affirmative right to vote.

There are certain very obvious limitations upon the power of Congress to legislate for the enforcement of this article: First, legislation authorized by the amendment must be addressed to state action in some form, or through some agency; second, it must be limited to dealing with discrimination on account of race, color, or condition. These in their order:

1. That state, and not individual, action, is the subject of this article, would seem clear from many considerations. The right to vote in a purely state election, being, as we have seen, a right granted by and dependent upon the law of the state, is therefore a right which can only be denied or abridged by the state. The amendment is therefore, in terms, addressed to state action. Action by the United States and by the state in contravention of this right of nondiscrimination on account of race, color, or condition is inhibited. It has been argued that the amendment operates only to annul discriminations in existing

constitutions and laws, and to prohibit all future legislation denying or abridging the right of suffrage on account of race, color, and condition, and that the power of Congress to enforce it is therefore limited to legislation appropriate to the prevention and punishment of conduct based upon discriminating legislation. We think this too narrow a view of the article. Although it has reference to state, and not individual, action, it has a wider scope than the mere nullification or inhibition of state legislative action, and avoids and inhibits not only state legislation, but all state action of every kind, and by every one assuming to exercise the power of the state, whether the state's authority be exceeded or not. When the Constitution speaks of a state, and inhibits the doing of certain things, it sometimes includes under the term "state" every instrumentality or agency of the state which presumes to act by authority of the state, and in other cases the action of the state in its sovereign or legislative character is alone referred to. This amendment is not limited to the prohibition of "laws" denying or abridging the elective function. For this very reason we conclude that legislation enforcing it may be corrective of any state action, whether based on state laws authorizing discrimination or not. With the exception of the first clause of the first section of the fourteenth amendment, that section is, like the fifteenth amendment, addressed broadly to the state. The other clauses of that section read as follows:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Each of the clauses quoted above has been authoritatively construed as addressed to state action in some form, and not to mere individual conduct. Slaughter House Case, 16 Wall. 36, 21 L. Ed. 394; Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676; United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; United States v. Harris, 106 U. S. 629, 638, 1 Sup. Ct. 601, 27 L. Ed. 290; Virginia v. Rives, 100 U. S. 313, 25 L. Ed. 667; Civil Rights Case, 109 U. S. 3, 11, 3 Sup. Ct. 18, 27 L. Ed. 835; Chicago, B. & Q. R. v. Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979.

In United States v. Cruikshank, the Chief Justice said:

"The fourteenth amendment prohibits a state from depriving any person of life, liberty, or property without due process of law, or from denying to any person the equal protection of the laws; but this provision does not add anything to the rights of one citizen against another. It simply furnishes an additional guaranty against any encroachment by the state upon the fundamental rights which belong to every citizen as a member of society."

In Virginia v. Rives the court said:

"The provisions of the fourteenth amendment here refer to state action, exclusively, and not to any action of private individuals."

In United States v. Harris, Justice Woods, after citing and commenting upon the earlier cases, said of the fourteenth amendment:

"The language of the amendment does not leave this subject in doubt. When the state has been guilty of no violation of its provisions; when it has not made or enforced any law abridging the privileges or immunities of citizens of the United States; when no one of its departments has deprived any person of life, liberty, or property without due process of law, or denied to any person within its jurisdiction the equal protection of the law; when, on the contrary, the laws of the state, as enacted by its legislative and construed by its judicial and administered by its executive departments, recognize and protect the rights of all persons, the amendment imposes no duty and confers no power upon congress."

Referring to Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676, where a law of Congress prohibiting discrimination in jury service on account of race, color, etc., was upheld as warranted by the last clause of the first section of the fourteenth amendment, the court, in the Civil Rights Case, 109 U. S. 3, 151, 3 Sup. Ct. 18, 24, 27 L. Ed. 835, said:

"In Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676, it was held that an indictment against a state officer under this section for excluding persons of color from the jury list is sustainable. But a moment's attention to its terms will show that the section is entirely corrective in its character. Disqualifications for service on juries are only created by the law, and the first part of the section is aimed at certain disqualifying laws, namely, those which make mere race or color a disqualification; and the second clause is directed against those who, assuming to use the authority of the state government, carry into effect such a rule of disqualification. In the Virginia case, the state, through its officer, enforced a rule of disqualification which the law was intended to abrogate and counteract. Whether the statute book of the state actually laid down any such rule of disqualification or not, the state, through its officer, enforced such a rule; and it is against such state action, through its officers or agents, that the last clause of the section is directed. The aspect of the law was deemed sufficient to divest it of any unconstitutional character, and makes it differ widely from the first and second sections of the same act which we are now considering."

In Chicago, Burlington & Quincy R. Co. v. Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979, it is said, referring to the fourteenth amendment:

"That the prohibitions of the amendment refer to all the instrumentalities of the state, to its legislative, executive, and judicial authorities; and therefore whoever, by virtue of public position under a state government, deprives another of any right protected by that amendment against deprivation by the state, violates the constitutional inhibition; and as he acts in the name and for the state, is clothed with the state's power, his act is that of the state."

In Logan v. United States, 144 U. S. 263, 293, 12 Sup. Ct. 617, 626, 36 L. Ed. 429, the cases cited above were reviewed, and the doctrine to be deduced from them thus formulated:

"The whole scope and effect of this series of decisions is that, while certain fundamental rights, recognized and declared, but not granted or created, in some of the amendments to the Constitution, are thereby guarantied only against violation or abridgment by the United States, or by the states, as the case may be, and cannot, therefore, be affirmatively enforced by Congress against unlawful acts of individuals, yet that every right created by, arising under, or dependent upon the Constitution of the United States may be protected and enforced by Congress by such means and in such manner as Congress, in the exercise of the correlative duty of protection, or of the legislative powers conferred upon it by the Constitution, may, in its discretion, deem most eligible and best adapted to attain the object."

The principles of interpretation applicable to the first section of the fourteenth amendment are equally applicable to the construction of the fifteenth amendment. The amendment simply limits state power in respect to suffrage at state elections by prohibiting discrimination in the enjoyment of the elective franchise on account of race, color, or condition. The right to vote in its own election can be conferred only by the state. No one, therefore, but the state, can "deny or abridge" the right to vote. The amendment is therefore properly addressed to the state. Individuals may by unlawful force or fraud prevent an otherwise lawful voter from voting. But it would simply be an act of lawless violence. The right of suffrage would not be denied or abridged. Individuals cannot deny or abridge the right of suffrage, for they cannot confer it. It is a right which is secured by, and dependent upon, law. Individuals cannot "deny or abridge" a right of suffrage confirmed by law by a mere lawless act of fraud or intimidation or violence. To deny or abridge it in the sense and meaning of the fifteenth amendment, there must be some act of the state, through its legislative, judicial, or executive departments. Some one exercising the power of the state, whether with or without the sanction of the law of the state, must deny to otherwise qualified voters the right to vote on account of race, color, or condition. That would be an act of the state, and such act might be made an offense against the United States by virtue of the power granted by the fifteenth amendment. To justify legislation directed to the mere lawless acts of individuals at a purely state election, even though such acts be based upon color or race, would be to enter the domain of the police power of the state. We speak only of purely state elections, for the power of Congress over its own elections rests upon altogether different principles. There is no more reason for assuming that this amendment authorizes legislation for the punishment of the ruffianly act of an individual in preventing the enjoyment of the right to vote in a state or municipal election, even though the intimidation be grounded upon race, color, or previous condition of servitude, than there would be for legislation punishing a trespass upon property upon the ground that such a trespass would be a denial of due process of law. Both the fourteenth and the fifteenth amendments are addressed to state action through some channel exercising the power of the state.

2. Appropriate legislation grounded on this amendment is legislation which is limited to the subject of discrimination on account of race, color, or condition. The act commonly known as the "Enforcement Act" (being the act of May 31, 1870; 16 Stat. 140) contained a number of sections which were plainly intended to enforce the provisions of the fifteenth amendment. These sections were the first, third, fourth, and fifth. The first has been carried into the Revised Statutes as section 2004 [U. S. Comp. St. 1901, p. 1272]. The third, having been held unconstitutional, is dropped out. The fourth, in a somewhat changed form, is carried into the Revised Statutes as section 5506, and the fifth section is section 5507 [U. S. Comp. St. 1901, p. 3712] of the Revised Statutes. The third, fourth, and fifth sections of that act have been held to have been in excess of the jurisdiction of the Congress under the fifteenth amendment, and therefore null and

void. The ground upon which this conclusion was reached was that neither section was confined in its operation to discriminations on account of race, color, or previous condition of servitude, and all were broad enough to cover wrongful acts both within and without the jurisdiction of Congress under the article. United States v. Reese, 92 U. S. 214, 23 L. Ed. 563; Lackey v. United States, 46 C. C. A. 189, 107 Fed. 114, 53 L. R. A. 660.

3. It may be conceded that the Congress has power to provide for the indictment and punishment of any person exercising the power of the state who should exclude, on account of race, color, or previous condition of servitude, the vote of lawfully qualified voters, even at a purely state election. But has congress so legislated? Section 5508 [U. S. Comp. St. 1901, p. 3712] is plainly not limited to acts done by persons acting under and exercising the power of the state. The indictment charges that the defendant conspirators were officers of election, and, as such officers, excluded colored voters from voting on account of race, color, etc. If the case made by the indictment is within this section, it is not because it provides specifically for the punishment of the offense charged, but because it comes under the general provision providing for the punishment of any unlawful interference with the free enjoyment of some right or privilege secured by the Constitution or laws of the United States. This section has for its object the punishment of all persons who conspire to prevent the free enjoyment of any right or privilege secured by the Constitution or laws of Congress, without regard to whether the persons so conspiring are private individuals or officials exercising the power of the United States or of a State. Neither does it draw any distinction between a conspiracy directed against the exercise of the right of suffrage based upon race or color, and a conspiracy not so grounded. It is therefore not legislation appropriate to the enforcement of the fifteenth amendment; and, if the only warrant for its enactment was that article, we should be obliged to hold that Congress had exceeded its jurisdiction, because broad enough to cover wrongful acts without as well as within its jurisdiction. That it is not within the province of the courts to so limit an act by judicial construction as to make it operate only on that which Congress may rightfully prohibit and punish is now a well-settled principle of constitutional interpretation. United States v. Reese, 92 U. S. 214, 23 L. Ed. 563; United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550; United States v. Harris, 106 U. S. 629, 1 Sup. Ct. 601, 27 L. Ed. 290; Civil Rights Cases, 109 U. S. 3, 3 Sup. Ct. 18, 27 L. Ed. 835; Lackey v. United States, 46 C. C. A. 189, 107 Fed. 114, 53 L. R. A. 660.

The case of United States v. Reese, above cited, is very much in point. The court had under consideration the constitutionality of sections 3 and 4 of the act of May 31, 1870, now constituting Section 5506 of the Revised Statutes. The indictment charged two inspectors of a municipal election in the state of Kentucky with refusing to receive the votes of certain colored voters, in contravention of the terms of the third section of the act. The section in question was directed to the conduct of election judges and inspectors, but did not limit the

operation of the act to exclusions from suffrage on account of race, color, or condition. The court said, in speaking of the section then under consideration:

"We find there no words of limitation, or reference, even, that can be construed as manifesting any intention to confine its provisions to the terms of the fifteenth amendment. That section has for its object the punishment of all persons who, by force, bribery, etc., hinder, delay, etc., any person from qualifying or voting. In view of all these facts, we feel compelled to say that, in our opinion, the language of the third and fourth sections does not confine their operation to unlawful discriminations on account of race, etc. If congress had the power to provide generally for the punishment of those who unlawfully interfere to prevent the exercise of the elective franchise, without regard to such discrimination, the language of these sections would be broad enough for that purpose. It remains now to consider whether a statute so general as this in its provisions can be made available for the punishment of those who may be guilty of unlawful discrimination against citizens of the United States, while exercising the elective franchise, on account of their race, etc. There is no attempt in the sections now under consideration to provide specifically for such an offense. If the case is provided for at all, it is because it comes under the general prohibition against any wrongful act or unlawful obstruction in this particular. We are therefore directly called upon to decide whether a penal statute enacted by Congress, with its limited powers, which is in general language, broad enough to cover wrongful acts without as well as within the constitutional jurisdiction, can be limited by judicial construction so as to make it operate only on that which Congress may rightfully prohibit and punish. For this purpose we must take these sections of the statute as they are. We are not able to reject a part which is unconstitutional, and retain the remainder, because it is not possible to separate that which is unconstitutional, if there be any such, from that which is not. The proposed effect is not to be attained by striking out or disregarding words that are in the section, but by inserting those which are not now there. Each of the sections must stand as a whole, or fall altogether. The language is plain. There is no room for construction, unless it be as to the effect of the Constitution. The question, then, to be determined, is whether we can introduce words of limitation into a penal statute so as to make it specific, when, as expressed, it is general only. It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government. The courts enforce the legislative will, when ascertained, if within the constitutional grant of power. Within its legitimate sphere, Congress is supreme, and beyond the control of the courts; but if it steps outside of its constitutional limitations, and attempts that which is beyond its reach, the courts are authorized to, and, when called upon in due course of legal proceedings must, annul its encroachments upon the reserved power of the states and the people. To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one. This is no part of our duty. We must therefore decide that. congress has not as yet provided by 'appropriate legislation' for the punishment of the offense charged in the indictment, and that the Circuit Court properly sustained the demurrers and gave judgment for the defendants."

In United States v. Harris, 106 U. S. 629, 637, 1 Sup. Ct. 601, 27 L. Ed. 290, section 5519 [U. S. Comp. St. 1901, p. 3714] was held void, as not warranted by the constitution. That section is in these words:

"Sec. 5519. If two or more persons. in any state or territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities under

the law; or for the purpose of preventing or hindering the constituted authorities of any state or territory giving or securing to all persons within such state or territory the equal protection of the laws; each of such persons shall be punished by a fine of not less than five hundred nor more than five thousand dollars, or by imprisonment, with or without hard labor, not less than six months nor more than six years, or by both such fine and imprisonment."

It was sought to be supported under the thirteenth, fourteenth, and fifteenth amendments. The court said:

"It is clear that the fifteenth amendment can have no application. That amendment, as was said by this court in the case of United States v. Reese, 92 U. S. 214, 23 L. Ed. 563, 'relates to the right of citizens of the United States to vote. It does not confer the right of suffrage on any one. It merely invests citizens of the United States with the constitutional right of exemption from discrimination in the enjoyment of the elective franchise on account of race, color, or previous condition of servitude.' See, also, United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; s. c. 1 Woods, 308, Fed. Cas. No. 14,897. Section 5519 of the Revised Statutes [U. S. Comp. St. 1901, p. 3714] has no reference to this right. The right guarantied by the fifteenth amendment is protected by other legislation of Congress, namely, by sections 4 and 5 of the act of May 31, 1870, c. 114, and now embodied in sections 5506 and 5507 of the Revised Statutes [U. S. Comp. St. 1901, p. 3712]. Section 5519, according to the theory of the prosecution, and as appears by its terms, was framed to protect from invasion by private persons the equal privileges and immunities, under the laws, of all persons and classes of persons. It requires no argument to show that such a law cannot be founded on a clause of the Constitution whose sole object is to protect from denial or abridgment by the United States or States, on account of race, color or previous condition of servitude, the right of citizens of the United States to vote."

The court further held that the act was not warranted by either of the other amendments, because it covered cases both within and without the authority of Congress. Referring to the claim that it might be supported by the fourteenth amendment, the court said:

"As, therefore, the section of the law under consideration is directed exclusively against the action of private persons, without reference to the laws of the state, or their administration by her officers, we are clear in the opinion that it is not warranted by any clause of the fourteenth amendment."

Assuming that exemption from discrimination at a state election is a "right or privilege secured by the Constitution or laws of the United States," it is a right which originates only in the fifteenth amendment, and can only be enforced by legislation directed to state action in some form, by which otherwise qualified voters are denied the elective franchise on account of race or color. This is the limit of the power of Congress under the article. Section 5508 is not so limited, and is not, therefore, appropriate legislation for the enforcement of the fifteenth amendment. The warrant for the section is found in other provisions of the Constitution, and other sections of the act of 1870, from which this section was taken, carried into the Revised Statutes as sections 5506 and 5507, were intended to enforce this amendment. We therefore conclude that the offense charged in the indictment is not included within or covered by section 5508.

The judgment must be reversed, with directions to sustain the defendants' demurrer to the indictment.