## UNITED STATES v. HARRIS.

1. The omission to state, in the certificate of division of opinion between the judges of the Circuit Court in a criminal proceeding, that the point of difference is certified "upon the request of either party or their counsel," is not fatal to the jurisdiction of this court where such request can be fairly inferred.

2. Section 5519 of the Revised Statutes (*post*, p. 632) is unconstitutional.

ON a certificate of division in opinion between the judges of the Circuit Court of the United States for the Western District of Tennessee.

At the November Term, 1876, of the Circuit Court of the United States for the Western District of Tennessee an indictment, based on sect. 5519 of the Revised Statutes, was returned by the grand jury against one R. G. Harris and nineteen others. The indictment contained four counts. The first count charged as follows: "That R. G. Harris" (and nineteen others, naming them), "yeomen, of the county of Crockett, in the State of Tennessee, and all late of the county and district aforesaid, on, to wit, the fourteenth day of August, in the year of our Lord one thousand eight hundred and seventy-six, in the county of Crockett, in said State and district, and within the jurisdiction of this court, unlawfully, with force and arms, did conspire together with certain other persons whose names are to the grand jurors aforesaid unknown, then and there, for the purpose of

depriving Robert R. Smith, William J. Overton, George W. Wells, junior, and P. M. Wells, then and there being citizens of the United States and of said State, of the equal protection of the laws in this, to wit, that theretofore, to wit, on the day and year aforesaid, in said county, the said Robert R. Smith, William J. Overton, George W. Wells, junior, and P. M. Wells, having been charged with the commission of certain criminal offences, the nature of which said criminal offences being to the grand jurors aforesaid unknown, and having upon such charges then and there been duly arrested by the lawful and constituted authorities of said State, to wit, by one William A. Tucker, the said William A. Tucker then and there being a deputy sheriff of said county, and then and there acting as such ; and having been so arrested as aforesaid, and being then and there so under arrest and in the custody of said deputy sheriff as aforesaid, they, the said Robert R. Smith, William J. Overton, George W. Wells, junior, and P. M. Wells, were then and there by the laws of said State entitled to the due and equal protection of the laws thereof, and were then and there entitled under the said laws to have their persons protected from violence when so then and there under arrest as aforesaid.   And the grand jurors aforesaid, upon their oaths aforesaid, do further present, that the said R. G. Harris" (and nineteen others, naming them), " with certain other persons whose names are to the said grand jurors unknown, did then and there with force and arms unlawfully conspire together as aforesaid then and there for the purpose of depriving them, the said Robert R. Smith, William J. Overton, George W. Wells, junior, and P. M. Wells, of their rights to the due and equal protection of the laws of said State and of their rights to be protected in their persons from violence while so then and there under arrest as aforesaid and while so then and there in the custody of the said deputy sheriff, and did then and there deprive them, the said Robert R. Smith, William J. Overton, George W. Wells, junior, and P. M. Wells, of such rights and protection and of the due and equal protection of the laws of the said State, by then and there, while so under arrest as aforesaid and while so then and there in the custody of the said deputy sheriff as aforesaid, beating, bruising, wounding,

and otherwise ill-treating them, the said Robert R. Smith, William J. Overton, George W. Wells, junior, and P. M. Wells, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

The second count charged that the defendants, with force and arms, unlawfully did conspire together for the purpose of preventing and hindering the constituted authorities of the State of Tennessee, to wit, the said William A. Tucker, deputy sheriff of said county, from giving and securing to the said Robert R. Smith and others, naming them, the due and equal protection of the laws of said State, in this, to wit, that at and before the entering into said conspiracy, the said Robert R. Smith and others, naming them, were held in the custody of said deputy sheriff by virtue of certain warrants duly issued against them, to answer certain criminal charges, and it thereby became and was the duty of said deputy sheriff to safely keep in his custody the said Robert R. Smith and others while so under arrest, and then and there give and secure to them the equal protection of the laws of the State of Tennessee ; and that the defendants did then and there conspire together for the purpose of preventing and hindering the said deputy sheriff from then and there safely keeping, while under arrest and in his custody, the said Robert R. Smith and others, and giving and securing to them the equal protection of the laws of said State.

The third count was identical with the second, except that the conspiracy was charged to have been with the purpose of hindering and preventing said William A. Tucker, deputy sheriff, from giving and securing to Robert R. Smith alone the due and equal protection of the laws of the State.

The fourth count charged that the defendants did conspire together for the purpose of depriving said P. M. Wells, who was then and there a citizen of the United States and the State of Tennessee, of the equal protection of the laws, in this, to wit: said Wells having been charged with an offence against the laws of said State, was duly arrested by said Tucker, deputy sheriff, and so being under arrest was entitled to the due and equal protection of said laws, and to have his

person protected from violence while so under arrest; and the said defendants did then and there unlawfully conspire together for the purpose of depriving said Wells of his right to the equal protection of the laws, and of his right to be protected in person from violence while so under arrest, and "did then and there deprive him of such rights and protection, and of the due and equal protection of the laws of the State of Tennessee, by then and there, and while he, the said P. M. Wells, was so then and there under arrest as aforesaid, unlawfully beating, bruising, wounding, and killing him, the said P. M. Wells, contrary to the form of the statute in such case. made and provided," &c.

Section 5519 of the Revised Statutes is in the following words: "If two or more persons in any State or Territory conspire or go in disguise upon the highway or on the premises of another for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges or immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws, each of said persons shall be punished by a fine of not less than $500 nor more than $5,000, or by imprisonment, with or without hard labor, not less than six months nor more than six years, or by both such fine and imprisonment." This section was originally a part of sect. 2 of the act of April 20, 1871, c. 22.

The defendants demurred to the indictment on several grounds, among them the following :

1. " Because the offences created by section 5519 of the Revised Statutes of the United States, and upon which section the aforesaid four counts are based, are not constitutionally within the jurisdiction of the courts of the United States, and because the matters and things therein referred to are judicially cognizable by State tribunals only, and legislative action thereon is among the rights reserved to the several States, and inhibited to Congress by the Constitution of the United States ; " and, —

2. " Because the said section 5519, in so far as it creates

offences and imposes penalties, is in violation of the Constitution of the United States, and an infringement of the rights of the several States and the people thereof."

The case was heard in the Circuit Court on the demurrer to the indictment, and, as the record states, "came the district attorney, on behalf of the United States, and came also the defendants indicted herein, by their attorneys, when this case came on to be heard before the Honorable John Baxter, circuit judge, and the Honorable Connally F. Trigg, district judge, presiding, on the demurrer of the said defendants, filed herein on the fifth day of February, A. D. 1878, to the indictment herein, and the said judges being divided in opinion on the point of the constitutionality of the section of the Revised Statutes of the United States on which the said indictment is based, being section number 5519 thereof, . . . after argument, hereby direct the said point . . . to be certified to the Supreme Court of the United States for its decision thereon, and the same is accordingly ordered. And it is further ordered by the court that this case be continued until the decision of said Supreme Court in the premises."

Section 651 of the Revised Statutes, which authorizes certificates of division of opinion, declares: "Whenever any question occurs on the trial or hearing of any criminal proceeding before a Circuit Court, upon which the judges are divided in opinion, the point upon which they disagree shall, during the same term, upon the request of either party or their counsel, be stated under the direction of the judges, and certified, under the seal of the court, to the Supreme Court at their next session; but nothing herein contained shall prevent the cause from proceeding if, in the opinion of the court, further proceedings can be had without prejudice to the merits."

*The Solicitor-General* for the United States.

There was no opposing counsel.

MR. JUSTICE WOODS delivered the opinion of the court, and, after making the foregoing statement, proceeded as follows: —

The certificate of division of opinion in this case does not

expressly state that the point of difference between the judges was certified " upon the request of either party or their counsel." Neither party challenges the jurisdiction of this court, but it has occurred to us as a question, and we have considered it, whether this omission in the certificate is fatal to our jurisdiction, and we have reached the conclusion that it is not.

It fairly appears from the certificate that the point upon which the judges differed in opinion was stated, under their direction, in the presence of the counsel of both parties, without objection from either, and it is expressly stated that the cause was continued until the decision of this court upon the point of difference between the judges could be rendered. Had no certificate of division of opinion been made, the result must have been adverse to the sufficiency of the indictment, although the difference of opinion arose upon the demurrer of the defendants, for no judgment could have been given against them, if the judges were not agreed as to the constitutionality of the law upon which the indictment was based. Hence it became the duty of the prosecuting officer, and the interest of the government which he represented, to request a certificate of division of opinion for the determination of the question by this court. The case is brought to this court by the counsel for the United States upon the point stated in the certificate; the case is suspended until our decision upon the point certified is made; and he asks us to decide the question upon which the judges of the Circuit Court differed. These circumstances, all of which appear of record, considered in connection with the fact that the court made the certificate, raise the legal presumption that a request for the certificate was duly preferred. The record evidence of the fact of the request by counsel for the United States is incontrovertible.

It is suggested that under sect. 649 of the Revised Statutes, which provides that a jury may be waived " whenever the parties or their attorneys of record file with the clerk a stipulation in writing waiving a jury," this court has decided that the fact that the stipulation was in writing and filed with the clerk must appear of record in order to entitle the party to the review of the rulings of the court in the progress of the trial

provided by sect. 700, and, therefore, that in the present case the record should distinctly show the request. But sect. 649 expressly requires that the waiver of the jury shall be in writing and filed with the clerk. The section which provides for a certificate of division of opinion makes no such requirement in relation to the request for a certificate.

In one case the jurisdictional fact is the filing of a certain paper writing with the clerk; in the other, the making of a request, which may be oral, to the court. In either case, when the jurisdictional fact fairly appears by the record, our jurisdiction attaches. So, in this case, if the request may be fairly inferred from such circumstances as we have mentioned, that is all that is necessary to satisfy the statute. In *Supervisors* v. *Kennicott*, 103 U. S. 554, this court held that when a stipulation in writing was filed with the clerk, by which it was provided that the case might be submitted to the court on an agreed statement of facts, but which contained no express waiver of a jury, yet this amounted to a waiver sufficient to meet the requirements of sect. 649. And though the right of trial by jury is a constitutional one, yet this court has declared that when it simply appeared by the record that a party was present by counsel and had gone to trial before the court without objection or exception, a waiver of his right to a jury trial would be presumed, and he would be held in this court to the legal consequences of such waiver. *Kearney* v. *Case*, 12 Wall. 275.

We are, therefore, of opinion that the request by counsel of the United States for a certificate of division is sufficiently shown by the record in this case, and that our jurisdiction is clear.

We pass to the consideration of the merits of the case. Proper respect for a co-ordinate branch of the government requires the courts of the United States to give effect to the presumption that Congress will pass no act not within its constitutional power. This presumption should prevail unless the lack of constitutional authority to pass an act in question is clearly demonstrated. While conceding this, it must, nevertheless, be stated that the government of the United States is one of delegated, limited, and enumerated powers. *Martin*

v. *Hunter's Lessee*, 1 Wheat. 304; *McCulloch* v. *State of Maryland*, 4 id. 316; *Gibbons* v. *Ogden*, 9 id. 1. Therefore every valid act of Congress must find in the Constitution some warrant for its passage. This is apparent by reference to the following provisions of the Constitution: Section 1 of the first article declares that all legislative powers granted by the Constitution shall be vested in the Congress of the United States. Section 8 of the same article enumerates the powers granted to the Congress, and concludes the enumeration with a grant of power " to make all laws which shall be necessary and proper to carry into execution the foregoing powers and all other powers vested by the Constitution in the government of the United States, or in any department or officer thereof." Article X. of the amendments to the Constitution declares that " the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively or to the people."

Mr. Justice Story, in his Commentaries on the Constitution, says: " Whenever, therefore, a question arises concerning the constitutionality of a particular power, the first question is whether the power be expressed in the Constitution. If it be, the question is decided. If it be not expressed, the next inquiry must be whether it is properly an incident to an express power and necessary to its execution. If it be, then it may be exercised by Congress. If not, Congress cannot exercise it." Sect. 1243, referring to Virginia Reports and Resolutions, January, 1800, pp. 33, 34; President Monroe's Exposition and Message of May 4, 1822, p. 47; 1 Tuck. Black. Comm. App. 287, 288; 5 Marshall's Wash. App., Note 3; 1 Hamilton's Works, 117, 121.

The demurrer filed to the indictment in this case questions the power of Congress to pass the law under which the indictment was found. It is, therefore, necessary to search the Constitution to ascertain whether or not the power is conferred.

There are only four paragraphs in the Constitution which can in the remotest degree have any reference to the question in hand. These are section 2 of article 4 of the original Constitution, and the Thirteenth, Fourteenth, and Fifteenth

Amendments. It will be convenient to consider these in the inverse of the order stated.

It is clear that the Fifteenth Amendment can have no application. That amendment, as was said by this court in the case of *United States* v. *Reese*, 92 U. S. 214, " relates to the right of citizens of the United States to vote. It does not confer the right of suffrage on any one. It merely invests citizens of the United States with the constitutional right of exemption from discrimination in the enjoyment of the elective franchise on account of race, color, or previous condition of servitude." See also *United States* v. *Cruikshank*, id. 542; s. c. 1 Woods, 308. Sect. 5519 of the Revised Statutes has no reference to this right. The right guaranteed by the Fifteenth Amendment is protected by other legislation of Congress, namely, by sects. 4 and 5 of the act of May 31, 1870, c. 114, and now embodied in sects. 5506 and 5507 Revised Statutes.

Section 5519, according to the theory of the prosecution, and as appears by its terms, was framed to protect from invasion by private persons, the equal privileges and immunities under the laws, of all persons and classes of persons. It requires no argument to show that such a law cannot be founded on a clause of the Constitution whose sole object is to protect from denial or abridgment, by the United States or States, on account of race, color, or previous condition of servitude, the right of citizens of the United States to vote.

It is, however, strenuously insisted that the legislation under consideration finds its warrant in the first and fifth sections of the Fourteenth Amendment. The first section declares " all persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The fifth section declares " the Congress shall have power to enforce by appropriate legislation the provisions of this amendment."

It is perfectly clear from the language of the first section that its purpose also was to place a restraint upon the action of the States. In *Slaughter-House Cases*, 16 Wall. 36, it was held by the majority of the court, speaking by Mr. Justice Miller, that the object of the second clause of the first section of the Fourteenth Amendment was to protect from the hostile legislation of the States the privileges and immunities of citizens of the United States; and this was conceded by Mr. Justice Field, who expressed the views of the dissenting justices in that case. In the same case the court, referring to the Fourteenth Amendment, said that "if the States do not conform their laws to its requirements, then by the fifth section of the article of amendment Congress was authorized to enforce it by suitable legislation."

The purpose and effect of the two sections of the Fourteenth Amendment above quoted were clearly defined by Mr. Justice Bradley in the case of *United States* v. *Cruikshank*, 1 Woods, 308, as follows: "It is a guaranty of protection against the acts of the State government itself. It is a guaranty against the exertion of arbitrary and tyrannical power on the part of the government and legislature of the State, not a guaranty against the commission of individual offences; and the power of Congress, whether express or implied, to legislate for the enforcement of such a guaranty does not extend to the passage of laws for the suppression of crime within the States. The enforcement of the guaranty does not require or authorize Congress to perform "the duty that the guaranty itself supposes it to be the duty of the State to perform, and which it requires the State to perform."

When the case of *United States* v. *Cruikshank* came to this court, the same view was taken here. The Chief Justice, delivering the opinion of the court in that case, said: " The Fourteenth Amendment prohibits a State from depriving any person of life, liberty, or property without due process of law, or from denying to any person the equal protection of the laws; but this provision does not add anything to the rights of one citizen as against another. It simply furnishes an additional guarantee against any encroachment by the States upon the fundamental rights which belong to every citizen as a

member of society. The duty of protecting all its citizens in the enjoyment of an equality of rights was originally assumed by the States, and it remains there. The only obligation resting upon the United States is to see that the States do not deny the right. This the amendment guarantees, and no more. The power of the national government is limited to this guaranty." 92 U. S. 542.

So in *Virginia* v. *Rives*, 100 id. 313, it was declared by this court, speaking by Mr. Justice Strong, that "these provisions of the Fourteenth Amendment have reference to State action exclusively, and not to any action of private individuals."

These authorities show conclusively that the legislation under consideration finds no warrant for its enactment in the Fourteenth Amendment.

The language of the amendment does not leave this subject in doubt. When the State has been guilty of no violation of its provisions; when it has not made or enforced any law abridging the privileges or immunities of citizens of the United States; when no one of its departments has deprived any person of life, liberty, or property without due process of law, or denied to any person within its jurisdiction the equal protection of the laws; when, on the contrary, the laws of the State, as enacted by its legislative, and construed by its judicial, and administered by its executive departments, recognize and protect the rights of all persons, the amendment imposes no duty and confers no power upon Congress.

Section 5519 of the Revised Statutes is not limited to take effect only in case the State shall abridge the privileges or immunities of citizens of the United States, or deprive any person of life, liberty, or property without due process of law, or deny to any person the equal protection of the laws. It applies, no matter how well the State may have performed its duty. Under it private persons are liable to punishment for conspiring to deprive any one of the equal protection of the laws enacted by the State.

In the indictment in this case, for instance, which would be a good indictment under the law if the law itself were valid, there is no intimation that the State of Tennessee has passed

any law or done any act forbidden by the Fourteenth Amendment.   On the contrary, the *gravamen* of the charge against the accused is that they conspired to deprive certain citizens of the United States and of the State of Tennessee of the equal protection accorded them by the laws of Tennessee.

As, therefore, the section of the law under consideration is directed exclusively against the action of private persons, without reference to the laws of the State or their administration by her officers, we are clear in the opinion that it is not warranted by any clause in the Fourteenth Amendment to the Constitution.

We are next to consider whether the Thirteenth Amendment to the Constitution furnishes authority for the enactment of the section.   This amendment declares that "neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States or any place subject to their jurisdiction."   " Congress shall have power to enforce this article by appropriate legislation."

It is clear that this amendment, besides abolishing forever slavery and involuntary servitude within the United States, gives power to Congress to protect all persons within the jurisdiction of the United States from being in any way subjected to slavery or involuntary servitude, except as a punishment for crime, and in the enjoyment of that freedom which it was the object of the amendment to secure.   Mr. Justice Swayne, in *United States* v. *Rhodes*, 1 Abb. (U. S.) 28 ; Mr. Justice Bradley, in *United States* v. *Cruikshank*, 1 Woods, 308.

Congress has, by virtue of this amendment, declared, in sect. 1 of the Act of April 9, 1866, c. 31, that all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to none other.

But the question with which we have to deal is, does the

Thirteenth Amendment warrant the enactment of sect. 5519 of the Revised Statutes. We are of opinion that it does not. Our conclusion is based on the fact that the provisions of that section are broader than the Thirteenth Amendment would justify. Under that section it would be an offence for two or more white persons to conspire, &c., for the purpose of depriving another white person of the equal protection of the laws. It would be an offence for two or more colored persons, enfranchised slaves, to conspire with the same purpose against a white citizen or against another colored citizen who had never been a slave. Even if the amendment is held to be directed against the action of private individuals, as well as against the action of the States and United States, the law under consideration covers cases both within and without the provisions of the amendment. It covers any conspiracy between two free white men against another free white man to deprive him of any right accorded him by the laws of the State or of the United States. A law under which two or more free white private citizens could be punished for conspiring or going in disguise for the purpose of depriving another free white citizen of a right accorded by the law of the State to all classes of persons — as, for instance, the right to make a contract, bring a suit, or give evidence — clearly cannot be authorized by the amendment which simply prohibits slavery and involuntary servitude.

Those provisions of the law, which are broader than is warranted by the article of the Constitution by which they are supposed to be authorized, cannot be sustained.

Upon this question, *United States* v. *Reese*, 92 U. S. 214, is in point. In that case this court had under consideration the constitutionality of the third and fourth sections of the act of May 31, 1870, c. 114, now constituting sects. 2007, 2008, and 5506 of the Revised Statutes. The third section of the act made it an offence for any judge, inspector, or other officer of election, whose duty it was, under the circumstances therein stated, to receive and count the vote of any citizen, to wrongfully refuse to receive and count the same; and the fourth section made it an offence for any person by force, bribery, or other unlawful means to hinder or delay any

citizen from voting at any election, or from doing any act required to be done to qualify him to vote.

The indictment in the case charged two inspectors of a municipal election in the State of Kentucky with refusing to receive and count at such election the vote of William Garner, a citizen of the United States, of African descent. It was contended by the defendants that it was not within the constitutional power of Congress to pass the section upon which the indictment was based. The attempt was made by the counsel for the United States to sustain the law as warranted by the Fifteenth Amendment to the Constitution of the United States. But this court held it not to be appropriate legislation under that amendment. The ground of the decision was that the sections referred to were broad enough not only to punish those who hindered and delayed the enfranchised colored citizen from voting, on account of his race, color, or previous condition of servitude, but also those who hindered or delayed the free white citizen. The court, speaking by the Chief Justice, said: "It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government. The courts enforce the legislative will, when ascertained, if within the constitutional grant of power. But if Congress steps outside of its constitutional limitation and attempts that which is beyond its reach, the courts are authorized to, and when called upon must, annul its encroachment upon the reserved rights of the States and the people."

And the court declared that it could not limit the statute so as to bring it within the constitutional power of Congress, and concluded: "We must, therefore, decide that Congress has not as yet provided by appropriate legislation for the punishment of the offences charged in the indictment."

This decision is in point, and, applying the principle established by it, it is clear that the legislation now under consideration cannot be sustained by reference to the Thirteenth Amendment to the Constitution.

There is another view which strengthens this conclusion. If

Congress has constitutional authority under the Thirteenth Amendment to punish a conspiracy between two persons to do an unlawful act, it can punish the act itself, whether done by one or more persons.

A private person cannot make constitutions or laws, nor can he with authority construe them, nor can he administer or execute them. The only way, therefore, in which one private person can deprive another of the equal protection of the laws is by the commission of some offence against the laws which protect the rights of persons, as by theft, burglary, arson, libel, assault, or murder. If, therefore, we hold that sect. 5519 is warranted by the Thirteenth Amendment, we should, by virtue of that amendment, accord to Congress the power to punish every crime by which the right of any person to life, property, or reputation is invaded. Thus, under a provision of the Constitution which simply abolished slavery and involuntary servitude, we should, with few exceptions, invest Congress with power over the whole catalogue of crimes. A construction of the amendment which leads to such a result is clearly unsound.

There is only one other clause in the Constitution of the United States which can, in any degree, be supposed to sustain the section under consideration ; namely, the second section of article 4, which declares that " the citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States." But this section, like the Fourteenth Amendment, is directed against State action. Its object is to place the citizens of each State upon the same footing with citizens of other States, and inhibit discriminative legislation against them by other States. *Paul* v. *Virginia*, 8 Wall. 168.

Referring to the same provision of the Constitution, this court said, in *Slaughter-House Cases; ubi supra*, that it " did not create those rights which it called privileges and immunities of citizens of the States. It threw around them in that clause no security for the citizen of the State in which they were claimed or exercised. Nor did it profess to control the power of the State governments over the rights of its own citizens. Its sole purpose was to declare to the several States, that whatever those rights, as you grant or establish them to your

own citizens, or as you limit, or qualify, or impose restrictions on their exercise, the same, neither more nor less, shall be the measure of the rights of citizens of other States within your jurisdiction."

It was never supposed that the section under consideration conferred on Congress the power to enact a law which would punish a private citizen for an invasion of the rights of his fellow citizen, conferred by the State of which they were both residents; on all its citizens alike.

We have, therefore, been unable to find any constitutional authority for the enactment of sect. 5519 of the Revised Statutes. The decisions of this court above referred to leave no constitutional ground for the act to stand on.

The point in reference to which the judges of the Circuit Court were divided in opinion must, therefore, be decided against the *constitutionality of the law.*

MR. JUSTICE HARLAN dissented on the question of jurisdiction. He expressed no opinion on the merits.