### POWE et al. v. UNITED STATES.

### No. 9130.

Circuit Court of Appeals, Fifth Circuit.

Jan. 17, 1940.

148

Harry T. Smith, D. R. Coley, Jr., and George A. Sossaman, all of Mobile, Ala., for appellants.

Francis H. Inge, U. S. Atty., of Mobile, Ala., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The five appellants were indicted (with another who was acquitted) for conspiring to injure, oppress, threaten and intimidate a named citizen of the United States in the free exercise of his right and privilege as such citizen to speak and publish his views in certain newspapers. Their several demurrers were overruled and appel-

lants were convicted and sentenced. Of the numerous rulings asserted to be error on this appeal we need consider only the judgment upon the demurrers.

The grounds of demurrer to each count include these: That no crime against the United States is charged; that the right of free speech and free press is not secured by the Constitution and laws of the United States against infraction by individuals, but only by federal or State action; and that the counts are too vague. The eight counts are varying statements of the same conspiracy. Some of them say the conspiracy was to prevent future publications; others to oppress and injure because of past publications. Some counts state the nature of the publications, and the means to be used to oppress the writer; others fail so to state, baldly alleging in the words of the statute a conspiracy to injure and oppress the citizen of the United States in the exercise of or for having exercised his privilege of free speech and free press. One of the fullest statements is the second count, which charges that the conspiracy was to injure and oppress the executive editor of the Mobile Register and the Mobile Press, newspapers published in Mobile, Alabama, he being a citizen of the United States, in his exercise of his right and privilege secured to him by the Constitution and laws of the United States, to write and print in said newspapers his editorials exposing and condemning various forms of illegal gambling and illegal lotteries in Mobile County, Alabama, and calling upon the officials of the City of Mobile and County of Mobile, charged with the suppression thereof, to take action to suppress the same and to punish the offenders; the plan being to procure a photograph of the editor in a lewd or obscene act and to use the same in threatening to show the photograph, and in threatening to use it as evidence in prosecuting the editor, and thus to stop his publications; numerous overt acts to carry out the plan being alleged. Do these facts make an offense against the United States?

The statute relied on in support of the indictment originated as Section 6 of the Act of May 31, 1870, 16 Stat. 141, entitled "An Act to enforce the Right of Citizens of the United States to vote in the several States of this Union, and for other Purposes." It appeared in the Revised Statutes with some alteration as Section 5508; was carried without change into the Criminal Code as Section 19; and now appears as Section 51 of Title 18 of the United States Code, 18 U.S.C.A. § 51. The applicable language is: "If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same * * * they shall be fined not more than $5,000 and imprisoned not more than ten years, and shall, moreover, be thereafter ineligible to any office, or place of honor, profit, or trust created by the Constitution or laws of the United States." Some of the Sections of the Enforcement Act of 1870 were repealed in 1909, but Section 6, as then reenacted, stands good for whatever it properly covers. United States v. Moseley, 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355.

In its construction it is proper to apply the rule that criminal laws are to be construed strictly, and to bear in mind that other rule that a construction is to be avoided, if possible, that would render the law unconstitutional, or raise grave doubts thereabout. In view of these rules it is held that "citizen" means "citizen of the United States", and not person generally, nor citizen of a State; and that the "rights and privileges secured by the Constitution or laws of the United States" means those specially and validly secured thereby. Thus limited, this section has been enforced as constitutional. Ex parte Yarbrough, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274; United States v. Waddell, 112 U.S. 76, 5 S.Ct. 35, 28 L.Ed. 673; Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; United States v. Moseley, supra. In the Yarbrough case the right involved was that to vote in a Congressional election, as it was in the Moseley case; in the Waddell case it was the right to make a federal homestead entry; and in the Logan case it was the right to be secure from lawless violence while a prisoner in the hands of a United States Marshal. These matters, all within the federal power, Congress could protect under the general authority to pass "all necessary and proper laws", under U.S. C.A.Constitution, Art. 1, Sect. 8, Par. 18. But Section 5519 of the Revised Statutes, which undertook similarly to punish conspiracies against any person to deprive him of the equal protection of the laws, or

to prevent State authorities from affording such protection, was held unconstitutional, because neither the Fourteenth Amendment nor any other part of the Constitution put the matter of conspiracies by individuals touching such matters within the power of Congress, but only gave power to correct wrong action by the State or its officers. It was so held in United States v. Harris, 106 U.S. 629, 1 S.Ct. 601, 27 L.Ed. 290, where the person mobbed was in the custody of a State Sheriff; and in Baldwin v. Franks, 120 U.S. 678, 7 S.Ct. 656, 763, 30 L.Ed. 766, where the rights of a Chinese under a treaty of the United States were involved. It was again held that the power of Congress was not extended to protect against violations by individuals of the general rights of persons and citizens by the mention of such rights in the Fourteenth Amendment, U.S.C.A., in the Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835. The reasoning of these cases, though opposed by some dissents, is full and convincing, and the conclusion reached as to the effect upon federal power of the Fourteenth Amendment has stood for more than two generations.

Pursuing further the application of the statute now before us, in Baldwin v. Franks, supra, it was held the word "citizen" means citizen of the United States in a political sense, and did not include a resident Chinese. Again in Hodges v. United States, 203 U.S. 1, 27 S.Ct. 6, 51 L.Ed. 65, the section was invoked against conspirators who were charged with interfering with citizens in their right or liberty· of contracting to work in a lawful occupation, but the court held that this was a common right of all persons, and the Fourteenth Amendment did not put it under federal protection except against State action; and the fact that the persons there involved were negroes did not bring the matter within the special ambit of the Thirteenth Amendment. Similarly in United States v. Wheeler, 254 U.S. 281, 41 S.Ct. 133, 65 L.Ed. 270, the right invaded by the conspirators was the citizen's right to remain in the State of his choice, and to remove only at his own will. The Court conceded the right to be fundamental and to belong to the citizens of each State, and to be guarded in part against State interference by Art. 4, Sect. 2 of the Constitution, but held that no federal offense was involved in an abduction done by individual conspirators. The only case cited to us in which a conspiracy against the right of freedom of speech was involved is United States v. Hall, in the Circuit Court of Alabama, 26 Fed.Cas. 79, No. 15,282. Justice Woods there upheld the indictment, but this was.in 1871, before the decision. of any of the above cited cases in the Supreme Court, and it is not reconcilable with his own opinion in United States v. Harris, 106 U.S. 629, 1 S.Ct. 601, 27 L.Ed. 290.

■ We are controlled by the above cited decisions of the Supreme Court. That the right of free speech and a free press, understood with the limitations to prevent abuses which the law has always annexed to .these freedoms, is fundamental to the continuance of free political institutions, and is the right both of citizens and other persons in the United States and the several States needs no reassertion. The ground has been covered recently and the right vindicated as against State action by federal power by virtue of the Fourteenth Amendment, in such cases as Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660; De Jonge v. Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278; Herndon v. Lowry, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066; Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949; Schneider v. State of New Jersey (Town of Irvington), 60 S.Ct. 146, 84 L.Ed. ——; Frank Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

■ But this effect of the Fourteenth Amendment on State action, as has been shown, is not enough to bring conspiracies of individuals within the punitive power of Congress under the section we are discussing. Nor can the special mention of freedom of speech and press in the First Amendment have that effect. The provision there is "Congress shall make no law * * * abridging the freedom of speech, or of the press." That the first ten amendments were intended as limitations on the power of the federal government and are not grants of power to it has been established from the beginning. A flat prohibition against the regulation of a matter in one direction cannot result in endowing Congress with power to regulate it in another direction. This amendment, while regarding freedom in religion, in speaking and printing, and in assembling and petitioning the government for redress of

grievances as fundamental and precious to all, seeks only to forbid that Congress should meddle therein. If Congress can make any law in behalf of these it is because of some power elsewhere expressly granted, or because it is a law necessary and proper to carry out such power. We are familiar with federal laws touching on freedom of speech and press such as the Espionage Law of 1917, 40 Stats. 217, which rested on the war power of Congress and the general implied power to maintain the safety of the Government. See Frohwerk v. United States, 249 U.S. 204, 39 S.Ct. 249, 63 L.Ed. 561; Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470. And we do not doubt that Congress may directly protect its citizens in their right to assemble peaceably and petition the federal government for redress, just as it may protect persons from unlawful violence while in federal custody, under what are called the implied powers of Congress. Federal elections might probably be directly protected by Congress although no question of race, color, or previous condition of servitude under the Fifteenth Amendment be present. But in the cases supposed Congress would interfere directly only because of the necessity to maintain a federal right in its integrity. Because the federal government is a republican one in which the will of the people ought to prevail, and because that will ought to be expressive of an informed public opinion, the freedom of speaking and printing on subjects relating to that government, its elections, its laws, its operations and its officers is vital to it. Assuming that for this reason Congress, if it finds it necessary, can legislate to maintain such freedom in that field, it does not follow that Congress can legislate generally to preserve such freedom in discussing religious affairs, or social or artistic matters, or matters of purely State concern. Again, by Art. 4, Sect. 4, of the Constitution the United States shall guarantee to every State a republican form of government. Should a tyranny be set up in a State accompanied by a suppression of free speech and press, conceivably the Congress might be called on, temporarily in the execution of this guaranty, to pass a law securing against individual violence free speech in such State; but the section before us is not such a law.

The dividing line between the powers of the State and federal governments in preserving these great general rights of persons, and the difference between the rights and privileges of a citizen of the State and of the United States, was clearly recognized in United States v. Cruikshank, 92 U.S. 542, 552, 23 L.Ed. 588, when the section under discussion first came before the Supreme Court. It was there stated that the right of assembly to petition Congress would be "an attribute of national citizenship, and, as such, under the protection of, and guaranteed by, the United States", and "if it had been alleged * * * that the object of the defendants was to prevent a meeting for such a purpose, the case would have been within the statute, and within the scope of the sovereignty of the United States." But since the indictment only alleged generally that the meeting was "for a lawful purpose", no crime was charged, because the protection of the right of assembly in general was in the power of the State. The other counts alleged conspiracies generally to deprive of the equal protection of the law, and of life and liberty without due process of law, and the Fourteenth Amendment was held not to extend federal power as to those matters beyond the controlling of State action. On the authority of the Cruikshank case the counts in the present indictment, which do not disclose what the speaking and printing conspired against related to, charge no offense, because the right to freely speak and print about matters in general is not "secured by the Constitution and laws of the United States." The other counts which state the speaking and printing related wholly to matters with which the City and County of Mobile were concerned, and with which the United States had no concern, expressly disclose the matter to have been beyond the authority of Congress, and not a right or privilege protected by the section. The demurrers to the indictment ought therefore to have been sustained. The judgment is reversed, the conviction set aside, and the cause remanded with direction to sustain the demurrers.