Marshall E. Livingston, J.
This is an application to annul and vacate a determination made by the State Division of Human Rights, dated August 28, 1968, as contrary to law and being without and in excess of the jurisdiction of the State Division of Human Rights as set forth in article 15 of the Executive Law of the State of New York (§§ 290-301).
Judgment is also asked to dismiss the complaint of Geneva Stokes against these petitioners and to prohibit the respondents and Geneva 'Stokes from holding any hearing or taking any further action in relation to the proceeding now pending before the State Division of Human Rights entitled, ‘ ‘ Division of Human Rights on the Complaint of Geneva iStokes against Robert L. Berback and Carol A. Berback, Case No. VT-CH-39-68”.
Petitioners (Berbacks) are the owners of a two-family home at 215^217 Elmtree Road, Rochester, New York, where they reside and occupy one apartment. This house, it is admitted by the respondents herein, consists of a “ building which contains housing accommodations for not more than two families living independently of each other ’ ’.
This description admitted by the respondents, incidentally, is the exemption contained in the last sentence of paragraph (a) of subdivision 5 of section 296- of the Executive Law of the State of New York, wherein the dispute arises between the parties.
The respondents admit all of the allegations contained in the Berbacks’ petition, except paragraphs “ 7 ” and “ 9 ” which are denied, and paragraph ‘ ‘ 10 ’ ’ which is also denied, except the respondents admit that a public hearing on the issue has been scheduled. 'This is one of the procedures the Berbacks ask to be quashed as without and beyond the jurisdiction of the Commissioner and Director under article 15 of the Executive Law.
In substance, the Berbacks assert that they own a two-family, owner-occupied house in Rochester, New York, one part of which the complainant, Geneva 'Stokes, alleges they refused to rent to her as a housing accommodation because of her race and color. The Berbacks appeared before Rosetta M. McDowell, acting *43 regional director of the ¡State Division of Human Bights, claiming that their two-family, owner-occupied home was exempted from the unlawful discriminatory practices set forth in section 296 of the Executive Law.
Subdivision 5 (par. [a]) of section 296 of the Executive Law states:
‘1 It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or any person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, or any agent or employee thereof:
“ (1) To refuse to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a housing accommodation because of the race, creed, color or national origin of such person or persons.
“ (2) To discriminate against any person because of his race, creed, color or national origin in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith.
“ (3) To print or circulate or cause to be printed or circulated any statement, advertisement or publication, or to use any form of application for the purchase, rental or lease or such a housing accommodation or to make any record or inquiry in connection with the prospective purchase, rental or lease of such a housing accommodation which expresses, directly or indirectly, any limitation, specification or discrimination as to race, creed, color or national origin, or any intent to make any such limitation, specification or discrimination.
“ The provisions of this paragraph (a) shall not apply (1) to the rental of a housing accommodation in a building which contains housing accommodations for not more than two families living independently of each other, if the owner or members of his family reside in one of such housing accommodations, or (2) to the rental of a room or rooms in a housing accommodation, if such rental is by the occupant of the housing accommodation or by the owner of the housing accommodation and he or members of his family reside in such housing accommodation. ’ ’
The Division of Human Bights contends that the exemptions of owner-occupied, two-family homes and the rental of rooms in a housing accommodation by the owner residing* therein from the unlawful discriminatory practices set forth in section 296 of the Executive Law are unconstitutional and violate the Thirteenth and Fourteenth Amendments to the United ¡States *44 Constitution as well as section 11 of article I of the New York State 'Constitution.
The pertinent part of section I of the Fourteenth Amendment applicable here reads as follows: “No State shall make or enforce any law which shall abridge the privileges * * * of citizens of the United States * * * nor deny to any person within its jurisdiction the equal protection of -the laws.”
Section 11 of article I of the New York State Constitution provides: “ No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.”
The respondent division asserts that the act of Congress on April 9, 1866, now codified (U.iS. Code, tit. 42, § 1982), reproduced below, was enacted pursuant to the authority of section 2 of the Thirteenth Amendment to the United States Constitution: ‘ ‘ All citizens of the United ¡States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property. ’ ’ It might be difficult to see how the Thirteenth Amendment, abolishing slavery and involuntary servitude (except where a person is duly convicted of a crime and punished therefor) furnished the basis for Congress to enact section 1982 and therein declare that all United 'States citizens shall have the same right “to inherit, purchase, lease, sell, hold and convey real and personal property ’ ’. However, United States v. Harris (106 U. S. 629) so held, and in 1968 the United States Supreme Court, in Jones v. Mayer Co. (392 U. S. 409) expressly upheld the constitutionality of section 1982 and applied it to discrimination practiced by a private owner against a prospective Negro purchaser. As Mr. Justice Douglas said (supra, p. 444): “ Enabling a Negro to buy and sell real and personal property is a removal of one of many badges of slavery ’ ’. The Mayer case (supra) also held the section is a valid exercise of Congressional power to enforce the Thirteenth Amendment.
Notwithstanding this background the Thirteenth Amendment authority for section 1982, the Fourteenth Amendment, which prohibits a ¡State from passing laws ‘ ‘ which shall abridge the privileges * * * of citizens * * * or deny to any person * * * the equal protection of the laws ”, has its enlarged counterpart in section 11 of article I of the New York State Constitution. These fundamental Federal and State con *45 stitutional precepts form an ample background to discuss article 15 of the Executive Law (Human Rights Law) and particularly section 296 (subd. 5, par. [a]) thereof, the last sentence of which exempts the rental of housing accommodations in an owner-occupied, two-family dwelling.
Subdivision 5 (par. [a]) of section 296 of the Executive Law was added by chapter 414 of the Laws of 1961 (§ 4, efh.Sept. 1, 1961). In 1963, chapter 481 (§ 2, eff. Sept. 1, 1963) deleted provisions limiting the accommodations covered to those in a multiple dwelling or among 10 or more housing accommodations located on contiguous land, etc., and substituted the present last sentence of paragraph (a) of subdivision 5 of section 296 of the Executive Law.
Thus the exemptions provided in the last sentence of paragraph (a) of subdivision 5 of section 296 of the Executive Law have been with us nearly six years, and neither counsels’ nor my research has found a case wherein the question here presented has been raised.
In Matter of State Comm, for Human Bights v. Kennelly (23 N Y 2d 722, affg. 30 A D 2d 310) both the Appellate Division and the 'Court of Appeals found, inter alia, that the law against discrimination insofar as it applied to private housing and the delegated powers of the commission was constitutional. However, this broad holding is no mandate here because the attack upon the law there involved the broader question of constitutionality and not the narrow issue of jurisdiction limited by the exemption the law provides which, if it is constitutional, protects these petitioners.
Section 301 of the Executive Law relating to separability, of course, preserves the validity of the remaining portions of the statute if any ‘ ‘ clause, sentence, paragraph or part of this article ” be adjudged invalid.
In the posture of this case, it should be noted that section 298 (judicial review and enforcement) of the Executive Law is not applicable. As of now there has been no order of the Human Rights Review Board (indeed it appears that it is not as yet in formal existence) from which these petitioners might appeal directly to the Appellate Division, as provided therein.
There is a parallel statute, however, which on a Federal level shows a legislative consideration and determination similar to our chapter 15 of the Executive Law.
Public Law 90-284 (tit. VIII, §§ 801-819, April 11, 1968; 82 TJ. S. Stat. 73, 81-89) is included in the Civil Rights Act of 1968. The fair housing provisions of that Act are found in the United States 'Code (tit. 42, §§ 3601-3619).
*46 Section 3601 thereof declares the policy of the United States to be to constitutionally provide for fair housing throughout the United States, and section 3602 defines the terms used in the su'bchapter.
Section 3603 provides for the application of the act to certain dwellings, and (§ 8603, sulbd. [a], par. [2]) “ After December 31, 3968, to all dwellings covered by paragraph (1) and to all other dwellings except as exempted by [subdivision] (b) of this section” (italics supplied). Subdivision (b) thereof provides: “Nothing in section 3604 of this title (other than [subdivision] [c]) shall apply to * * * (2) rooms or units in dwell-
ing containing living quarters occupied or intended to be occupied by no more than four families living independently of each other, if the owner actually maintains and occupies one of such living quarters as his residence.: ’
It is apparent that section 3603 (subd. [b], par. [2]) is substantially equivalent to the last sentence of paragraph (a) of subdivision 5 of section 296 of the Executive Law of the State of New York.
Of course, the United States Fair Housing Law of 1968 applies in substance only to (1) dwellings owned or operated by the Federal Government; (2) dwellings provided in whole or in part from loans, grants, advances, etc., made by the Federal Government; (3) dwellings provided in whole or in part by loans insured, guaranteed or otherwise secured by the Federal Government; and (4) dwellings provided by funds emanating from a State or local ¡public agency receiving Federal money for slum clearance or urban renewal.
Thus the United States Congress and the New York State Legislature have under constitutional authority specifically spoken out against unlawful discriminatory practices relating to the sale or leasing of privately owned housing. The exemptions provided by these laws, and particularly the New York State provisions are here challenged as unconstitutional and invalid when considered in the broad concept of the purposes and policies enunciated by the statutes.
There is a strong presumption of constitutionality which bolsters the foundation under our entire body of laws. The courts have always started out with the premise that a law duly enacted by a Legislature is in harmony with the Constitution and should not be stricken down unless the contrary clearly appears (8 N. Y. Jur., Constitutional Law, § 59).
This case is no exception, but I do not care to rest on that principle alone. It seems to me that there is ample built-in, careful legislative intent to warrant holding the New York *47 Executive Law (§ 296, subd. '5, par. [a]) constitutional, which Ido.
As has already been noted, the present section 296 (subd. 5, par. [a]) of the Executive Law was enacted in 1963, when provisions limiting the accommodations covered to a multiple dwelling or among 10 or more housing accommodations located on contiguous land were deleted from the section and the present “ owner-occupied, two-family house ” exemption was added.
In view of the complete lack of precedent relating to our law, except as noted in Matter of State Comm, for Human Rights v. Kennelly (23 N Y 2d 722, supra), and because Jones v. Mayer CVo. (392 U. S. 409, supra) was under consideration by the United 'States Supreme Court at the time the Fair Housing Act of 1968 was passed, the first portion of Mr. Justice Stewart’s opinion {supra, pp. 413-417) is enlightening and pertinent to the relationship between section 1982 and the United ¡States Fair Housing Act of 1968. In order that this part of the opinion may 'be demonstrated, the portion to which I refer is as follows :
“ At the outset, it is important to make clear precisely what this case does not involve. Whatever else it may be, 42 U. S. C. § 1982 is not a comprehensive open housing law. In sharp contrast to the Fair Housing Title ('Title VIH) of the Civil Rights Act of 1968, Pub. L. 90-284, 82 Stat. 81, the statute in this case deals only with racial discrimination and does not address itself to discrimination on grounds of religion or national origin. It does not deal specifically with discrimination in the provision of services or facilities in connection with the sale or rental of a dwelling. It does not prohibit advertising or other representations that indicate discriminatory preferences. It does not refer explicitly to discrimination in financing-arrangements or in the provision of brokerage services. It does not empower a federal administrative agency to assist aggrieved parties. It makes no provision for intervention by the Attorney General. And, although it can be enforced by injunction,1 it contains no provision expressly authorizing a federal -court to order the payment of damages.
“ Thus, although § 1982 contains none of the exemptions that 'Congress included in the Civil Rights Act of 1968, it would be a serious mistake to suppose that § 1982 in any way diminishes the significance of the law recently enacted by Congress. Indeed, the 'Senate 'Subcommittee on Housing and Urban Affairs was informed in hearings held after the Court of Appeals had rendered its decision in this case that § 1982 might well be *48 “a' presently valid federal statutory ban against discrimination by private persons in the sale or lease of real property. ’ The Subcommittee was told, however, that even if this court should so construe § 1982, the existence of that statute would not ‘ eliminate the need for congressional action ’ to spell out 1 responsibility on the part of the federal government to enforce the rights it protects. ’ The point was made that, in light of the many difficulties confronted by private litigants seeking to enforce such rights on their own, ‘ legislation is needed to establish federal machinery for enforcement of the rights guaranteed under Section 1982 of Title 42 even if the plaintiffs in Jones v. Alfred H. Mayer 'Company should prevail in the United 'States ¡Supreme 'Court. ’
“ On April 10, 1968, Representative Kelly of New York focused the attention of the House upon the present case and its possible significance. She described the background of this litigation, recited the text of § 1982, and then added:
“ 1 When the Attorney General was asked in court about the effect of the old law [§ 1982] as compared with the pending legislation which is being considered on the House floor today, he said that the scope was somewhat different, the remedies and procedures were different, and that the new law was still quite necessary. ’
11 Later the same day, the House passed the Civil Rights Act of 1968. Its enactment had no effect upon § 1982 and no effect upon this litigation, but it underscored the vast differences between, on the one hand, a general statute applicable only to racial discrimination in the rental and sale of property and enforceable only by private parties acting on their own initiative, and, on the other hand, a detailed housing law, applicable to a broad range of discriminatory practices and enforceable by a complete arsenal of federal authority. Having noted these differences, we turn to a consideration of § 1982 itself.” (Footnotes omitted.)
Thus the quoted portion of the Mayer case, as I read it, emphasizes the relationship and scope of application between section 1982 and the 1968 Fair Housing Act. As Mr. Justice Htewart holds {supra, p. 415): “Thus, although § 1982 contains none of the exemptions that 'Congress included in the Civil Rights Act of 1968, it would be a serious mistake to suppose that § 1982 in any way diminishes the significance of the law recently enacted by Congress.” (Italics supplied. Footnotes omitted.) Both the Congress of the United iStates and the New York State Legislature have thus determined certain applicable exemptions in the respective statutes and thereby *49 included, in varying degrees, the legal assumption that “ a ¡man’s house is regarded as his castle”, or as was anciently said, “ his tutissimum refugium ” (14 C.J.S., Castle, p. 27).
I hold the exemption in the New York Human Bights Law (Executive Law, § >296, subd. 5, par. [a]) constitutional.
The petitioners are granted the relief asked for in toto, encompassing (1) lack of jurisdiction; (2) annulling the determination after investigation; (3) dismissing the complaint; and (4) injunction as to holding any hearing or taking any further steps in this proceeding.