REQUESTED BY: The Honorable Eric J. Will, Senator Nebraska State Legislature
You have requested our opinion regarding the constitutionality of potential legislation which would seek to authorize wagering on sports events. As you note in your letter, federal legislation enacted in 1992, the "Professional and Amateur Sports Protection Act", generally prohibits sports gambling conducted by, or authorized under the law of, any state or other governmental entity. Pub.L. No. 102-559, 106 Stat. 4227-4228 (codified at28 U.S.C. §§ 3701 to -3704). You have asked our opinion on several questions, including whether the federal legislation constitutes a valid exercise of Congress' power to regulate interstate commerce under U.S. Const. art. I, § 8, and whether the federal act contravenes the Privileges and Immunities Clause of U.S. Const. art. IV, § 2. You also ask whether enactment of a sports wagering law by the State of Nebraska would be constitutional under theTenth Amendment of the U.S. Constitution.
The Professional and Amateur Sports Protection Act, as noted, generally prohibits sports gambling conducted by, or authorized under the law of, any State or other governmental subdivision. Section 3702 prohibits any State or other governmental entity from sponsoring, operating, advertising, promoting, licensing, or authorizing by law or compact — and prohibits any person from sponsoring, operating, advertising, or promoting, pursuant to the law or compact of a governmental entity — "a lottery, sweepstakes, or other betting, gambling, or wagering scheme based, directly or indirectly (through the use of geographical references or otherwise), on one or more competitive games in which amateur or professional athletes participate, or on one or more performances of such athletes in such games." 28 U.S.C. § 3702.
Section 3704 (a) sets forth certain exceptions to the prohibitions in § 3702. Paragraph (1) provides that the prohibition does not apply to any "lottery, sweepstakes, or other betting, gambling, or wagering scheme in a governmental entity" to the extent that such scheme was actually conducted prior to August 31, 1990. Paragraph (2) provides that the prohibition does not apply to "a lottery, sweepstakes, or other betting, gambling, or wagering scheme in operation in a State or other governmental entity where both (A) such scheme was authorized" by law; and (B) a scheme as described in § 3702 (other than parimutuel animal racing or jai-alai) actually was conducted in that governmental entity "during the period beginning September 1, 1989, and ending October 2, 1991, pursuant to the law of that State or other governmental entity." Paragraph (3) provides that § 3702 does not apply to "a betting, gambling, or wagering scheme, other than a lottery described in paragraph (1), conducted exclusively in casinos located in a municipality", if such scheme was authorized not later than one year after the effective date of the act, and "any commercial casino gaming scheme was in operation in such municipality throughout the 10-year period ending on such effective date. . . ." Finally, paragraph (4) provides that § 3702 does not apply to "parimutuel animal racing or jai-alai games."
The Senate Report on the Professional and Amateur Sports Protection Act stated:
 [The] bill serves an important public purpose, to stop the spread of State-sponsored sports gambling and to maintain the integrity of our national pastime. States would be prohibited from sponsoring, operating, advertising, promoting, licensing, or authorizing sports lotteries or any other type of sports betting that is based on professional or amateur games or performances therein.
 Sports gambling threatens to change the nature of sporting events from wholesome entertainment for all ages to devices for gambling. It undermines public confidence in the character of professional and amateur sports. Furthermore, State-sanctioned sports gambling will promote gambling among our Nation's young people.
S. Rep. No. 102-248, 102d Cong., 2d Sess. 4 (1992), reprinted in
1992 U.S.C.C.A.N. 3553, 3555.
Articulating why federal action of this nature was necessary, the Senate Report further stated:
 Sports gambling is a national problem. The harms it inflicts are felt beyond the borders of those States that sanction it. The moral erosion it produces cannot be limited geographically. Once a State legalizes sports gambling, it will be extremely difficult for other States to resist the lure. . . . Without Federal legislation, sports gambling is likely to spread on a piecemeal basis and ultimately develop an irreversible momentum.
* * *
 Senate bill 474 represents a judgment that sports gambling — whether sponsored or authorized by a State or other governmental entity — is a problem of legitimate Federal concern for which a Federal solution is warranted.
Id. at 5-7, reprinted in 1992 U.S.C.C.A.N. at 3556-3558.
As to your first two questions regarding the constitutionality of the Professional and Amateur Sports Protection Act, we note that "[a] strong presumptive validity [ ] attaches to an Act of Congress." United States v. Nat'l Dairy Products Corp.,372 U.S. 29, 32 (1963). "[T]he courts of the United States [will] give effect to the presumption that Congress will pass no act not within its constitutional power," and "[t]his presumption should prevail unless the lack of constitutional authority to pass an act in question is clearly demonstrated." United States v. Harris,106 U.S. 629, 635 (1882). A person challenging the validity of an act of Congress must show "that by no reasonable probability can the challenged legislation fall within the wide range of discretion permitted to Congress." Helvering v. Davis, 301 U.S. 619, 641
(1937) (quoting United States v. Butler, 297 U.S. 1 (1935)).
In light of the strong presumption in favor of the constitutionality of acts of Congress, and the reasons advanced in the Senate Report accompanying Public Law No. 102-559, we do not believe it is appropriate to undertake an extensive or exhaustive analysis of whether the federal act may conceivably exceed Congress's power to regulate commerce between the states, or whether any potential violation of the guarantees afforded under the Privileges and Immunities Clause is implicated by the act. To our knowledge, no judicial decision invalidating the act on either ground has been rendered. Nor have you referred us to any pending action challenging the constitutionality of the act on these bases. Accordingly, we must presume that the federal act is a proper exercise of power by the United States Congress, in the absence of any judicial decision calling into question its validity.
In addition, you ask whether enactment of a sports wagering law by Nebraska would be constitutional "[u]nder theTenth Amendment of the U.S. Constitution, which reserves to the states powers not delegated to the states by the U.S. Constitution. . . ." Presuming, as we must, the validity of the federal act, it is clear that any state legislation which would conflict with the federal law would be invalid under the Supremacy Clause of the U.S. Constitution.
U.S. Const. art. VI, cl. 2, provides, in part: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . ., shall be the supreme Law of the Land; . . . ." The Supremacy Clause requires that "where `there is clear collision between state and federal law', . . ., or a conflict between federal law and the application of an otherwise valid state enactment," . . ., federal law must prevail. Hamm v. City of RockHill, 379 U.S. 306, 311-12 (1964) (citations omitted). Simply put, "[s]tate law is preempted to the extent that it actually conflicts with federal law." English v. General Elec. Co., 496 U.S. 72, 79
(1990).
Obviously, any Nebraska law which would purport to authorize sports wagering would conflict with the prohibition contained in § 3702. Accordingly, any legislation which you may wish to propose to authorize sports wagering in Nebraska would, if enacted, conflict with federal law in violation of the Supremacy Clause.[1]
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
cc: Patrick O'Donnell Clerk of the Legislature
APPROVED BY:
Don Stenberg 
Attorney General
[1] We also note that, to the extent your request indicates that you would propose "legislation" authorizing sports wagering in Nebraska, merely seeking to allow such conduct by statute alone would violate Neb. Const. art. III, § 24. On two previous occasions, we have opined that wagering on sporting events is not authorized under art. III, § 24. Op. Att'y Gen. No. 87062 (April 24, 1987); Op. Att'y Gen. No. 25 (Feb. 26, 1985). Even if the state could authorize sports wagering without violating the federal act (which, as noted, it cannot), sports wagering could not be enacted in Nebraska unless an amendment to the Nebraska Constitution were adopted to allow such wagering.